IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **Neil F. Letren** )<br>105 E. Mill Avenue )<br>Capital Heights, MD 20743 )<br> )<br>         Plaintiff, )<br> )<br>v. )<br> )<br>**PNC Bank, N.A.** )<br>**Serve**: CSC-Lawyers Incorp. Srvc. Co. )<br>         7 Saint Paul Street, Suite 820 )<br>         Baltimore, MD 21202 )<br> )<br>         Defendant. ) | Civil Action No. _____ |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Neil F. Letren, files suit against defendant PNC Bank, N.A. ("PNC") and alleges as follows:

### PRELIMINARY STATEMENT

1.     This is an action for actual, statutory and punitive damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act or "FCRA")

### PARTIES

2.     The Plaintiff, Neil F. Letren, is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

3.     Defendant PNC has a division called PNC Mortgage that provides homes loans for customers in the United States. If offers mortgage, home purchase, and refinance loans, as well as home equity loans and lines of credit.

### FACTS

4.     Mr. Letren obtained two mortgage loans -- a first and second mortgage -- with National City Mortgage Company ("Nat'l City Mortg Co." or "Nat'l City") in July 2007. As a

part of the loan transaction Mr. Letren executed separate promissory notes and deed of trusts for both loans, all of which were payable to or to the benefit of Nat'l City Mortg Co.

5.      PNC acquired Nat'l City Mortg. Co. in November 2009.

6.      Prior to PNC's acquisition of Nat'l City, the first and second mortgages were transferred to other lenders.

7.      PNC did *not* acquire Mr. Letren's mortgage loans as a consequence of its acquisition of Nat'l City because Nat'l City was not holding either of the Letren loans.

8.      At one point BSI Financial claimed to have acquired at least one of the loans.

9.      And in July 2012 RoundPoint Mortgage Servicing Company ("RoundPoint") claimed to have acquired the second mortgage from BSI Financial.

10.      In October 2012 RoundPoint began reporting the second mortgage to Experian and Equifax.

11.      RoundPoint reported to Experian that the mortgage account was opened in July 2007 and had an original balance of $52,500.

12.      RoundPoint reported to Equifax that the mortgage account was a second mortgage, that it was opened in July 2007 and that it had an original balance of $52,500.

13.      Mr. Letren obtained his credit reports and discovered that PNC was erroneously reporting that it was the holder of two mortgage loan obligations against him.

14.      Mr. Letren disputed the erroneous PNC tradelines with the CRAs on at least three different and separate occasions.

15.      His disputes were submitted via letters and stated, among other things, that he did not have a mortgage with PNC, that PNC was not a holder of the promissory note, and that the PNC account was an erroneous duplicate of the RoundPoint tradeline.

16.     According to the CRAs' investigation results, the CRAs forwarded the Plaintiff's disputes to PNC who verified the erroneous tradeline as being reported accurately.

17.     Plaintiff Letren's disputes were specific and detailed enough to put PNC on notice that he was disputing that PNC held a loan against him. Although PNC was not in possession of loan documents establishing it had a valid loan obligation against Mr. Letren, PNC verified to the CRAs that it did have a valid loan against him.

18.     As a result of PNC's inaccurate reporting, the CRAs issued several credit reports containing the inaccurate and derogatory PNC mortgage accounts.

## COUNT ONE: VIOLATION OF FCRA
### (15 U.S.C. §1681s-2(b))

19.     The allegations set forth in paragraphs 1 - 18 above are re-alleged and incorporated by reference as if fully set forth herein.

20.     In response to Plaintiff's disputes, PNC did not conduct a thorough, detailed and careful inquiry of Plaintiff's claims. Instead of conducting a reasonable investigation and properly responding to Plaintiff's disputes, PNC performed a quick, sloppy, and superficial response, which consisted of nothing more than merely verifying identification information and/or matching the information on the credit reports with the information that PNC had on its computer system or same information previously reported to PNC.

21.     Because Plaintiff disputed that PNC was a holder of the Note or was an owner of the loan, PNC should have sought to verify that it was in possession of the Note that was endorsed to it.

22.     Had PNC performed its statutory obligations then it would have discovered that it was not in possession of the Note, much less in possession of a Note that was endorsed to it or bearer.

3

23.     Had PNC performed its statutory obligations then PNC would have reported to the CRAs that it did not have loan documentation proving it was a "holder" of the Note or had a valid debt obligation against the Plaintiff.

24.     PNC further compounded its violations by failing to even report to the CRAs that the Plaintiff disputed the accounts.

25.     Had PNC performed its statutory obligations then PNC would have actually conducted a detail, careful review of the Plaintiff's dispute that was forwarded from the CRAs, and would have instructed the CRAs to delete the tradelines because it could not verify it was the "holder" of the Note nor verify it had a valid mortgage debt obligation against the Plaintiff.

26.     PNC's procedure to simply data match information that it previous reported or has on its computer desktop with the information currently be reported to the CRA rather than to conduct a careful inquiry into the substance and merits of a dispute is unreasonable and a willful violation of the FCRA.

27.     PNC's intentional decision to report a debt against the Plaintiff while knowing it did not verify it was the holder of the debt was a willful violation of the FCRA.

28.     Accordingly, PNC's failure to comply with the requirements of 15 U.S.C. 1681s(2)(b)(1)-(5) is willful within the meaning of 15 U.S.C. 1681n(a).

29.     Alternatively, PNC's failure to comply with the requirements of 15 U.S.C. 1681s-2(b) was negligent within the meaning of 15 U.S.C. 1681o(a).

30.     As a result PNC's foregoing violations of 15 U.S.C. 1681s-2(b), Plaintiff's suffered actual damages, including but not limited to: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, frustration, humiliation and other emotional and mental distress.

31.   The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from PNC in an amount to be determined by the Court pursuant to 15 U.S.C. 1681n and 1681o.

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court

## DEMAND FOR TRIAL BY JURY

32.   Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

NEIL F. LETREN

Neil F. Letren
105 E. Mill Avenue
Capital Heights, MD 20743
Tel: (240) 838-6601
E-mail: neilletren@msn.com
*Pro Se Plaintiff*